IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| ERIC KELLER, on behalf of himself And all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |
| Plaintiff, | | |
| v. | | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | | |
| Defendant. | | |

### CLASS ACTION COMPLAINT

1. This is an action for damages brought by consumer, Eric Keller, on behalf of himself and all others similarly situated, against Defendant Experian Information Solutions, Inc. for violations of the Fair Credit Reporting Act (hereinafter the "FCRA"), 15 U.S.C. §§ 1681, *et seq*.

### THE PARTIES

2. Plaintiff Eric Keller is an adult individual who is a resident of West Virginia; however, during the time of the relevant transaction, he was working and physically living in the state of North Carolina as a travel nurse.

3. (a) Defendant Experian Information Solutions, Inc (hereafter "Experian") is an Ohio corporation registered to do business in North Carolina, with its principal office address located at 475 Anton Boulevard, Costa Mesa, CA, 92626.

(b) Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15

1

U.S.C. § 1681a(d), to third parties.

(c) Experian disburses such consumer reports to third parties under contract for monetary compensation.

## JURISDICTION & VENUE

4. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

5. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

**The Inaccurate Tradeline**

6. In or about March of 2021, the Plaintiff purchased a 2021 Toyota 4 Runner and financed the vehicle through TD Auto Finance.

7. In or about December of 2021, the Plaintiff refinanced the subject vehicle through Truist Bank.

8. Truist sent a payoff check to TD Auto for the original loan.

9. Thereafter, upon information and belief, Truist sent another payoff check to TD Auto for the original loan.

10. TD Auto, upon realizing that it had been paid twice for the same loan, refunded the amount of one of the payoff checks to Truist.

11. Truist Bank then mistakenly credited the money to Plaintiff's account with Truist and listed the car as paid off.

12. Truist released the title to the vehicle back to Plaintiff.

13. Plaintiff made numerous attempts thereafter to make payments on the loan, but Truist refused to take Plaintiff's payments on the basis that, according to Truist, Plaintiff's loan

was "paid off."

14. Plaintiff was unable to get Truist to accept a payment at any time.

15. Thereafter, on or about August of 2022, Truist realized it had made a mistake and reopened Plaintiff's account.

16. Truist alleged that Plaintiff owed $5,202.05 as the current amount due, which represented all the payments up to that point plus, upon information and belief, numerous late fees and significant interest.

17. Plaintiff made attempts to contact Truist to get the amount corrected, but Truist refused to help the Plaintiff.

18. Truist further reported on Plaintiff's credit report that he was several months in arrears.

19. This reporting was false due to the delinquency being entirely Truist Bank's mistake.

20. This reporting failed to acknowledge that Truist did not allow Plaintiff to make payments, even though he tried multiple times.

21. Instead of recognizing its error, Truist opted to ruin the Plaintiff's credit and demand an outrageous lump-sum payment in the month of August 2022.

**Experian's Refusal to Investigate**

22. Plaintiff decided to retain counsel.

23. Plaintiff then mailed, by counsel and by certified mail return receipt requested, credit report dispute letters to all three credit bureaus including Defendant Experian.

24. Plaintiff electronically signed the dispute letter.

25. Plaintiff authorized the dispute letter to be sent to Experian.

26. Defendant Experian sent a letter to Plaintiff stating that it refused to conduct a reinvestigation because it did not believe the letter was sent by or authorized by the Plaintiff.

27. The letter was, in fact, signed by the Plaintiff and contained a detailed dispute about a credit report entry in the letter.

28. Anyone who read the letter to Experian could tell that the letter was a clear dispute providing all the necessary information to conduct a reinvestigation.

29. In order to correct his credit inaccuracies, Plaintiff sent a second letter to Experian confirming that he authorized the dispute and imploring Experian to fulfill its legal obligations.

30. Upon information and belief, Experian relayed the credit report disputes to Truist Bank, as is standard practice in the credit reporting business and is required by contract.

31. Upon information and belief, Truist Bank verified the accuracy of the credit reporting to Experian, thus locking in the damage to Plaintiff's credit.

32. Experian never contacted Plaintiff regarding his dispute.

33. Upon information and belief, Experian did not conduct any investigation into Plaintiff's dispute other than to verify his account information.

34. Upon information and belief, Experian did not reasonably investigate Plaintiff's dispute.

35. Defendant Experian then mailed a letter to the Plaintiff stating that it verified that the information reported by Truist was accurate after a reinvestigation.

**Experian's Reckless Suspicious Letter Policy**

36. Upon information and belief, Experian is sending letters similar to the one sent to

4

Plaintiff in order to avoid its obligation to conduct reinvestigations under the Fair Credit Reporting Act.

37. Experian employs a suspicious mail policy ("SMP") in an effort to ensure correspondence it receives concerning a consumer was sent by the consumer rather than a third-party. *Younger v. Experian Information Solutions, Inc*, 817 Fed.Appx. 862, 865 (11th Cir. 2020).

38. This policy states:

"…that a sorter is to evaluate each piece of mail for certain 'listed' characteristics that might suggest a letter is not from the consumer. For example, 'suspicious' characteristics include envelopes that are 'similar' in type or size; envelopes that contain 'similar' ink color or font; letters with a 'similar letter format'; 'hand addressed envelopes' with 'a typed letter'; and '[u]nique handwriting.' Other suspicious characteristics include '[a] signature found on [an] attachment' that differs from 'the signature on the letter'; '[d]ata on an attachment document [that] appears to have been manipulated'; '[d]ata on an attachment document [that] does not appear logical'; **a 'return address [on the letter itself] which differs from the return address appearing on the envelope';** and '[a] series of envelop[e]s where the postmark is in the same city but the return address[es] are in different cities.' When five or more letters from different consumers in a batch of mail contain the same listed characteristic, the policy counsels that a sorter can "reasonabl[y] ... conclude that the[y] ... may not have been mailed by the consumer" and mark them suspicious. *Younger v. Experian Information Solutions, Inc*, 817 Fed.Appx. 862, 865-866 (11th Cir. 2020) (emphasis added).

39. Experian does not maintain a system tracking which employee marked a letter suspicious or why an employee marked a letter suspicious. *Younger v. Experian Information Solutions, Inc*, 817 Fed.Appx. 862, 864 (11th Cir. 2020).

40. Experian receives "anywhere from 3,000 to 10,000 pieces of mail every day" but employs only 10 to 14 sorters to review the mail for suspicious characteristics. *Younger v. Experian Information Solutions, Inc*, 817 Fed.Appx. 862, 866 (11th Cir. 2020).

41. Experian's policy dictates that suspicious letters are not reinvestigated without further action by the consumer even though Experian acknowledges that the duty to reinvestigate attaches when the consumer reporting agency receives the letter and nothing in the FCRA requires

5

Case 1:23-cv-00409-TDS-LPA   Document 1   Filed 05/17/23   Page 5 of 16

a consumer to take additional action under 15 U.S.C. § 1681i(a)(1)(A). *Younger v. Experian Information Solutions, Inc*, 817 Fed.Appx. 862, 866 (11th Cir. 2020).

42. A CRA may cease reinvestigating if it determines the consumer's dispute is "frivolous or irrelevant," including by reason of the consumer's failure to provide sufficient information to investigate the disputed information. 15 U.S.C. § 1681i(a)(3)(A).

43. A CRA has a duty to reinvestigate disputes that originate "directly" with the consumer under § 1681i(a)(1)(A).

44. However, a CRA does not have an exception for "suspicious mail."

45. Experian's decision to refuse to even review the dispute based on characteristics of the envelope fails to comply with 15 U.S.C. § 1681i(a)(1)(A).

46. It is impossible for Experian to determine whether a dispute is frivolous under 15 U.S.C. § 1681i(a)(3)(A) without opening and reading the dispute.

47. It is impossible for Experian to determine whether a dispute did not come "directly" from a consumer without opening and reading the dispute.

48. Experian recklessly disregards a risk of refusing to investigate consumer disputes authorized by consumers.

49. Where a violation of the FCRA is willful, the FCRA provides for statutory damages of $100 - $1,000 per violation, attorneys' fees, costs, and other forms of relief, including punitive damages. 15 U.S.C. § 1681n.

50. Under *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), the "willfulness" standard set forth in § 1681n encompasses not only "knowing" violations of the statute but also those committed in "reckless disregard" of the statute's requirements. *Id*. at 57, 127 S.Ct. 2201.

51.    A company's action is a willful violation if it "shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. (internal quotation marks omitted). That is, a company acts recklessly when its "'conduct ... entail[s] an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*.

52.    Experian's policy has been identified as a reckless violation of the FCRA and thus willful, with an aware of $3,000,000 in punitive damages levied by a jury. *Younger v. Experian Information Solutions, Inc*, 817 Fed.Appx. 862, 867 (11th Cir. 2020) (amount later vacated on appeal).

53.    The *Younger* decision and similar judicial outcomes nationwide have provided Experian notice that its suspicious mail policy entails an unjustifiably high risk of harm that is now known.

54.    Although Experian's suspicious mail policy may have once had a bare foundation in the statutory text, years of litigation have illustrated to Experian that its policy has a substantially greater risk of violating the law.

55.    Despite this finding and similar judicial outcomes nationwide, Experian continues to employ the same suspicious mail policy.

**Damages**

56.    As a result of the Defendant's conduct, Plaintiff has been unable to obtain a mortgage loan on a property he was interested in.

57.    Defendant has been reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties (hereafter the "inaccurate information").

7

58. The inaccurate information includes, but is not limited to, an account with Truist which was made delinquent not by Plaintiff's conduct but by that of Truist.

59. The inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor, and Plaintiff's credit worthiness. The inaccurate information consists of accounts and/or tradelines that contain derogatory information.

60. The Defendant credit reporting agency has been reporting the inaccurate information provided by Truist through the issuance of false and inaccurate credit information and consumer credit reports, and they have disseminated this inaccurate information to various persons and credit grantors, both known and unknown.

61. Notwithstanding Plaintiff's efforts, Defendant has failed to conduct timely and reasonable investigations of Plaintiff's disputes and has willfully continued to report such inaccurate information.

62. Despite Plaintiff's exhaustive efforts to date, Defendant has nonetheless deliberately, willfully, intentionally, recklessly, negligently, and repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA, has failed to remove the inaccurate information, and has continued to report the derogatory inaccurate information about the Plaintiff.

63. Plaintiff's credit reports and file have been obtained from credit reporting agencies and have been reviewed many times by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving many different credit opportunities, known and unknown.

64. As a result of Defendant's conduct, Plaintiff has suffered actual damages in the form of lost credit opportunities, harm to his credit reputation and credit score, and emotional

8

Case 1:23-cv-00409-TDS-LPA     Document 1     Filed 05/17/23     Page 8 of 16

distress.

65. At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment and under the direct supervision and control of the Defendant herein.

66. At all times pertinent hereto, the conduct of Defendant, as well as that of its agents, servants, and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

**Class Action Allegations**

67. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiff bring this action for himself and on behalf of the following class and subclass:

> All Natural persons in the United States who (a) made a request to Experian to provide a file disclosure and/or investigate alleged inaccuracies on their credit disclosure, (b) within the two-year period proceeding the filing of this action and during its pendency, and (c) to whom Experian mailed its suspicious mail response form letter.

68. Numerosity – Fed. R. Civ. P. 23(a)(1). The Plaintiff incorporates his prior allegations and estimates that the Classes and Subclass are so numerous that joinder of all members is impractical. Discovery will show the Classes and Subclass exceed 100 consumers, and those consumers are sufficiently geographically dispersed as to make joinder impracticable.

69. The exact number and identity of these persons is not known, but can be determined from the records maintained by Defendant. In many instances, Class Members are either unaware that claims exist or have sustained individual damages too small to justify the costs of bringing suit separately. Since Defendant employed uniform, failed systems across all reports it furnished, their conduct justifies this Class Action.

70. Commonality – Fed. R. Civ. P. 23(a)(2). The questions of law and fact common to the claims of each Class Member overwhelmingly predominate over any question of law or fact

affecting only individual members of the Classes. Questions of law and fact common to the Classes and Subclass include, but are not necessarily limited to, the following:

    a. Whether Defendant's suspicious mail policy was reasonable to assure compliance with the FCRA;

    b. Whether Defendant provided file disclosures to those consumers who requested them;

    c. Whether Defendant's practices were uniformly applied across all mail it received;

    d. Whether Defendant acted negligently or willfully;

    e. The amount of statutory damages to award to each Class and Subclass member; and

    f. The amount of punitive damages to award against Defendant.

71.    Typicality – Fed. R. Civ. P. 23(a)(3). The claim of Plaintiff is typical of the claims of the Classes he seeks to represent because at all times material to the allegations of this Class Action Complaint, Plaintiff and the members of the Classes were subject to the same policies, practices, and procedures and seek the same FCRA-based relief.

72.    Plaintiff and the Classes he seeks to represent have sustained similar types of harm, and the members of the Classes have claims that arise from an identical factual background and identical legal theories as do Plaintiff's.

73.    77. The Plaintiff's claims are typical of those of the Classes—Defendant refused to investigate or process mail received from Plaintiff in disregard of duties that were governed by the FCRA. When Defendant refused to even open Plaintiff's correspondence from Plaintiff and Class Members, they were uniformly in violation because they recklessly disregarded legal duties and therefore had no reasonable procedures in place to assure compliance with the FCRA.

74.    These processes and omissions were uniform and applied classwide, without regard to a particular transaction between Experian and its customer or the particular Class member involved.

75. The claims of Plaintiff are typical of the claims of the Classes he seeks to represent because at all times material to the allegations of this Class Action Complaint, Plaintiff and the members of the Classes he seeks to represent were subject to the same policies, practices, and procedures and seek the same kind of relief.

76. Plaintiff and the Classes he seeks to represent have sustained similar types of damages, and the members of the Class have claims that arise from an identical factual background and identical legal theories.

77. Adequacy of Representation – Fed. R. Civ. P. 23(a)(4). The Plaintiff will fairly and adequately protect the interests of the Class. The Plaintiff has retained Counsel experienced in handling FCRA class actions. Neither the Plaintiff nor his Counsel has any interests that might cause them not to vigorously pursue this action. The Plaintiff is aware of his responsibilities to the putative Class and has accepted such responsibilities.

78. Predominance and Superiority – Fed. R. Civ. P. 23(b). Certification of the classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that:

a. As alleged above, the questions of law or fact common to the members of the Class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelms the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences of proof in the case.

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims are generally ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford to bring such claims individually. Further, most consumers affected by the Defendant's FCRA violations would likely be unaware of their rights under the law, or who they could

11

find to represent them in federal litigation. Additionally, individual litigation of the uniform issues, in this case, would be a waste of judicial resources. The issues at the core of this case are class-wide and should be resolved at one time and with one set of proof. A win for one consumer would set the law for every similarly situated consumer.

## CLAIMS FOR RELIEF

### COUNT I - FAILURE TO CONDUCT REINVESTIGATION
### (Class Claim)

79. Plaintiff incorporates all of the preceding paragraphs by reference.

80. Experian is required pursuant to 15 U.S. Code § 1681i(a)(1)(A) to conduct a free reinvestigation when it receives a dispute from a consumer.

81. Experian is only allowed to dispense with the reinvestigation if, pursuant to 15 U.S. Code § 1681i(a)(3), the dispute is frivolous.

82. It is not relevant to the statute whether the consumer physically mailed the notice or whether someone other than the consumer physically mailed the notice on the consumer's behalf. The only relevant issue is whether or not the consumer reporting agency received the notice of dispute.

83. Experian has received numerous notices of disputes, including one from the Plaintiff, that it failed to conduct a reinvestigation on because it determined that someone other than the consumer mailed the notice.

84. As a result, Experian failed to conduct reinvestigations, as required by 15 U.S. Code § 1681i(a)(1)(A), for numerous consumers.

85. This failure to conduct required reinvestigations resulted in Plaintiff's, as well as numerous other individuals', reasonable notices of error not being reinvestigated by Experian.

86. As a result, Experian is liable for a statutory penalty pursuant to 15 U.S. Code §

1681i(a)(1)(A) for each time it failed to conduct a reinvestigation on the basis of the notice allegedly not coming directly from a consumer.

WHEREFORE, Plaintiff respectfully requests the following relief on behalf of himself and all others similarly situated:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit score; and

(g) Such other relief as the Court deems equitable, just, and proper.

### COUNT II – UNREASONABLE REINVESTIGATION
### (Individual Claim)

87. Plaintiff incorporates all of the preceding paragraphs by reference.

88. Defendant failed to conduct a reasonable reinvestigation of the information in Plaintiff's credit file after receiving actual notice of inaccuracies; failed to delete inaccurate information upon actual notice of inaccuracies; failed to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and relied upon verification from a source it has reason to know is unreliable, in violation of 15 U.S.C. § 1681i.

89. Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

90. Plaintiff was harmed by Defendant's conduct, action, and inaction.

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit score; and

(g) Such other relief as the Court deems equitable, just, and proper.

## COUNT III - REPORTING INFORMATION WHICH DEFENDANT CANNOT VERIFY
**(Individual Claim)**

91. Plaintiff incorporates all of the preceding paragraphs by reference.

92. Defendant failed to maintain "reasonable procedures" designed to prevent the reporting of incorrect information, in violation of 15 U.S.C. § 1681i(a)(5)(C).

93. Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

94. Plaintiff was harmed by Defendant's conduct, action, and inaction.

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit report and score; and

14

(g) Such other relief as the Court deems equitable, just, and proper.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendant, based on the following requested relief:

(a) Actual damages;

(b) Statutory damages;

(c) Punitive damages;

(d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, 1681o; and

(e) Such other and further relief as may be necessary, just, and proper.

Respectfully Submitted,

**Plaintiff,
Eric Keller,
On behalf of himself
and all others similarly situated,
By Counsel**

**/s/ Benjamin M. Sheridan**
Benjamin M. Sheridan (# 52734)
Jed R. Nolan (# 56899)
*Counsel for Plaintiff*
Klein & Sheridan, LC PC

Mailing Address:
964 High House Rd. PMB 2039
Cary, NC  27513

Physical Office:
2500 Regency Parkway

Cary, NC 27518

ben@kleinsheridan.com
jed@kleinsheridan.com
phone: (919) 899-9533
fax: (304) 562-7115