# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| ERIC KELLER, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>        Defendant. | Case No.: 1:23-cv-00409-LCB-LPA |

## MEMORANDUM OF LAW IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

### INTRODUCTION

This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* Rather than oppose Experian's motion to dismiss the original complaint, Plaintiff voluntarily amended his complaint. The case should now be dismissed with prejudice.

The allegations are straightforward. Plaintiff purchased a Toyota, and refinanced that purchase through a loan from Truist Bank. Plaintiff admits that he did not make any of the loan payments. Truist reported the delinquencies to Experian, which were reflected in Plaintiff's credit file. Plaintiff claims that his obligation to pay the loan was suspended or excused because Truist frustrated his contractual performance—namely, it refused to accept his loan payments. Plaintiff then retained counsel, who drafted a dispute letter to

Experian over the reporting of the Truist account. Plaintiff's counsel—not Plaintiff himself—affixed Plaintiff's e-signature to the letter and mailed it.

Experian, under its suspicious mail policy, correctly identified that the letter was not sent by Plaintiff himself, as required under Section 1681i to trigger a duty to reinvestigate. Thus, to ensure that a third party was not trying to gain improper access to Plaintiff's credit file, Experian requested that Plaintiff verify his identity, and confirm that the dispute was of his own making. Plaintiff did. Experian then conducted a reinvestigation. In connection with the reinvestigation, Truist "verified the accuracy of the credit reporting to Experian." ECF No. 1, ¶ 31. Experian, in turn, reported the results of the reinvestigation to Plaintiff. This lawsuit followed.

Plaintiff claims that Experian violated Section 1681i of the FCRA in three ways.

▪ <u>First</u>, Plaintiff claims that Experian's identity verification request, pursuant to its suspicious mail policy, violated Section 1681i because that statute "does not exempt a CRA [consumer reporting agency] from conducting an investigation into disputes that it deems 'suspicious.'" ECF No. 11, ¶ 57. But the law is well-settled. In fulfilling its responsibilities under Section 1681i, Experian may request that a consumer verify his identity to guard against identity theft. *Turner v. Experian Information Solutions, Inc.*, Case No. 3:16-CV-630, 2017 WL 2832738 (N.D. Ohio June 30, 2017) ("[T]his Court finds Experian's suspicious mail policy is reasonable because Experian has a duty not only to maintain accurate consumer credit information, but also to ensure the confidentiality of that information.").

- 2 -

▪ <u>Second</u>, Plaintiff claims that the reinvestigation that Experian conducted after his identity was verified was unreasonable. ECF No. 11, ¶¶ 103-106. Not so. To start, "[a]ccurate reporting by a credit reporting agency is [] a complete defense to claims under . . . § 1681i(a)." *Gauci v. Citi Mortg.*, 2012 WL 1535654, *5 (C.D. Cal. Apr. 30, 2012). Here, it is undisputed that Plaintiff never made one payment on the Truist loan. Hence, Experian's reporting is 100% accurate. While Plaintiff alleges that his payment obligations were suspended or excused by Truist's frustration of his performance, that is a textbook example of a *legal dispute* that Experian, pursuant to Fourth Circuit precedent, is not required to resolve in connection with a reinvestigation request under Section 1681i. *Saunders v. Branch Banking and Trust Co. Of Virginia*, 526 F.3d 142, 150 (4th Cir. 2008); *Jones v. City Plaza, LLC*, 1:19-CV-924, 2020 WL 2062325, at *4 (M.D.N.C. Apr. 29, 2020) (Tilley, J.) (holding same). Regardless, Plaintiff fails to allege facts establishing an unreasonable reinvestigation on Experian's part. Indeed, Plaintiff pleads that Experian "relayed the credit report disputes to Truist Bank, as is standard practice in the credit reporting business and is required by contract." ECF No. 1, ¶ 30.

▪ <u>Third</u>, Plaintiff claims that Experian violated Section 1681i by "reporting information that it could not verify." ECF No. 11, ¶¶ 107-110. Yet, Plaintiff admits that Truist, in connection with Experian's reinvestigation of Plaintiff's dispute, "*verified* the accuracy of the credit reporting to Experian" *see* ECF No. 1, ¶ 31 (emphasis added), an admission that defeats his claim.

In addition to the foregoing deficiencies, all claims fail because, apart from Plaintiff's threadbare allegation that his e-signature was affixed to letters that he admittedly

- 3 -

did not send himself, Plaintiff does not plead any *facts* establishing that he played a role in the preparation of the dispute letters; his new allegation that he "worked with" his counsel is conclusory and lacks factual support. "Under those circumstances, the letters did not come 'directly' from [Plaintiff]," as is required to trigger a duty to reinvestigate under Section 1681i. *See Warner v. Experian Information Solutions, Inc.*, 931 F.3d 917, 921 (9th Cir. 2019) (citing *Turner*, 2017 WL 2832738, at *8 (holding that the plaintiff did not notify Experian of a dispute "directly" because "[s]he did not draft the dispute letter, provide documentation supporting its claims, review its accuracy, sign it, or mail it")). *Warner* and *Turner* are dispositive. All claims under Section 1681i thus fail.

Finally, there is no basis to maintain a willful violation claim under *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007). Given the well-developed body of case law and administrative agency guidance: (1) upholding Experian's right to request identity verification in connection with a reinvestigation request, and (2) finding that Experian has no obligation to reinvestigate where, as here, a dispute letter was not sent by the consumer himself, there is no violation of Section 1681i, much less a willful violation. *Id.*

Accordingly, this action should be dismissed with prejudice.

## SUMMARY OF ALLEGATIONS

In March of 2021, Plaintiff purchased a 2021 Toyota 4 Runner, which he financed through TD Auto Finance. ECF No. 11, ¶ 6. In December of 2021, Plaintiff refinanced his Toyota through Truist Bank. *Id.*, ¶ 7. In connection with the refinance, Truist sent a check to TD Auto to payoff the original loan. *Id.*, ¶ 8. Plaintiff alleges, on "information and belief," that Truist then sent another payoff check to TD Auto for the original loan.

- 4 -

*Id.*, ¶ 9. TD Auto, upon realizing that it had been paid twice for the same loan, refunded the amount of one of the payoff checks to Truist. *Id.*, ¶ 10. Truist, in turn, allegedly mistakenly credited that refunded money to Plaintiffs account, and listed the car as paid off. *Id.*, ¶ 11. Truist then released the title to the vehicle to Plaintiff. *Id.*, ¶ 12 and Ex. A.

Thereafter, Plaintiff claims that he made numerous attempts to make payments on the loan, but claims that Truist refused to accept such payments. *Id.*, ¶ 14. According to Plaintiff, "he was unable to get Truist to accept a payment at any time." *Id.*, ¶ 15. Thus, Plaintiff affirmatively alleges that he did not make any payments on the Truist loan. *Id.*

In August of 2022, Plaintiff claims that Truist "realized it had made a mistake and reopened Plaintiff's account." *Id.*, ¶ 17. Truist sent Plaintiff a due bill of $5,202.05, which consisted of all the monthly payments up to that point that Plaintiff did not make, plus late fees and interest. *Id.*, ¶ 18. Plaintiff claims that he attempted to contact Truist to get the amount corrected, to no avail. *Id.*, ¶ 19. Plaintiff does not allege that he ever made any loan payments—either before or after discovery of the alleged error.

Truist reported to Experian that Plaintiff was several months in arrears on the loan. *Id.*, ¶ 20. As it is required to do by law, Experian reported those delinquencies in Plaintiff's credit file. According to Plaintiff, this reporting was "false" due to the delinquency being entirely Truist Bank's "mistake." *Id.*, ¶ 21. This reporting, according to Plaintiff, failed to acknowledge that Truist did not allow Plaintiff to make payments, thus frustrating Plaintiff's payment obligations. *Id.*, ¶ 22.

Thereafter, Plaintiff hired a lawyer to repair that credit reporting. *Id.*, ¶ 24. Plaintiff authorized his counsel to affix his e-signature to the correspondence. *Id.*, 26. In his original

complaint, Plaintiff did not allege that he played any role in the preparation of the letter. ECF No. 1, ¶ 24. He now alleges that he "worked with" his lawyers in drafting the letter, *see* ECF No. 11, ¶ 25, but does not allege any facts establishing what, if anything, he actually did. Regardless, Plaintiff still concedes that he himself did not mail the letter, alleging instead that he "authorized" his counsel to send the letter to Experian. *Id.*, ¶ 26.

Plaintiff alleges that the dispute letter "clearly sets forth Plaintiff's dispute," *id.*, ¶ 30, "is clearly signed at the bottom by Plaintiff," *id.*, ¶ 31, and lists Plaintiff as the "Sender" of the letter, *id.*, ¶ 33. But Plaintiff himself did not "clearly sign[]" the letter; instead, his counsel affixed his e-signature. *Id.*, ¶ 26. Nor was Plaintiff the "Sender" of the letter; instead, his counsel sent the letter. *Id.* While the body of the letter misleadingly and incorrectly "lists" Plaintiff as the "Sender"—*i.e.*, the letter does not identify his counsel as the drafter and sender of the letter (in order to circumvent the direct dispute requirement imposed by Section 1681i)—Experian, pursuant to its suspicious mail policy, correctly identified that the letter was not sent by Plaintiff himself. *Id.*, ¶ 34. Deeming it suspicious and to guard against, among other things, potential identity theft, Experian contacted Plaintiff to request identity verification—*i.e.*, did you make this dispute? *Id.* In response, Plaintiff sent Experian a letter "confirming that he authorized the dispute." *Id.*, ¶ 38.

Upon receipt of the requested verification, Experian "relayed the credit report disputes to Truist Bank, as is standard practice in the credit reporting business and is required by contract." EFC No. 1, ¶ 30; ECF No. 11, ¶ 39. Truist, in turn, informed Experian that Plaintiff did not make any of the required loan payments, and hence, "verified the accuracy of the credit reporting to Experian." *Id.*, ECF No. 1. ¶ 31; ECF No. 11, ¶ 40.

- 6 -

Experian then mailed a letter to the Plaintiff stating that it verified that the information reported by Truist was accurate after a reinvestigation. ECF No. 11, ¶ 46.

## STATEMENT OF QUESTIONS PRESENTED

1.    In order to state a claim under Section 1681i of the FCRA, a party must plead and prove that a consumer reporting agency maintains inaccurate credit information about a consumer. Should Plaintiff's claims under Section 1681i be dismissed because he pleads that he never made any payments on the Truist loan, and Experian accurately reported that undisputed fact in his credit file?

2.    Under the law in the Fourth Circuit and elsewhere, a consumer reporting agency, pursuant to a reinvestigation request under Section 1681i of the FCRA, is not required to reinvestigate a dispute between a consumer and a creditor/data furnisher over the validity of a debt. Should Plaintiff's claims under Section 1681i be dismissed to the extent Plaintiff contends that Experian's reinvestigation was unreasonable because it failed to adjudicate whether Truist's alleged frustration of performance excused or suspended Plaintiff's contractual payment obligations?

3.    Courts throughout the country roundly have held that a consumer reporting agency, pursuant to a reinvestigation request under Section 1681i of the FCRA, may request an identity verification from a consumer where dispute correspondence did not appear to come from the consumer himself. Should Plaintiff's claim under Section 1681i be dismissed where Experian *correctly* identified that a dispute letter was not sent by Plaintiff himself, and Experian sought an identity verification from Plaintiff before reinvestigating his dispute?

- 7 -

4.     In order to trigger a duty to reinvestigate under Section 1681i of the FCRA, the statute, on its face, requires that a dispute be communicated to a consumer reporting agency by the consumer himself "directly." Every court interpreting this requirement, as well as the Federal Trade Commission, have so concluded. Should Plaintiff's claims under Section 1681i be dismissed because Plaintiff affirmative pleads that he himself did not send any dispute correspondence to Experian "directly" and, moreover, he does not allege sufficient facts that he played any role in the preparation of the dispute?

5.     Section 1681i of the FCRA requires a consumer reporting agency to conduct a reasonable reinvestigation of a consumer's dispute. Should Plaintiff's claims under Section 1681i be dismissed given Plaintiff's allegation that Experian's reinvestigation conformed to "standard practice in the credit reporting business and [wa]s required by contract?"

6.     Plaintiff pleads that Experian violated Section 1681i of the FCRA by "reporting information that it could not verify." Should that claim be dismissed given Plaintiff's allegation that Truist, in connection with Experian's reinvestigation of Plaintiff's dispute, "verified the accuracy of the credit reporting to Experian?"

7.     Both the United States Supreme Court and courts throughout the country have held that where case law and/or administrative guidance support actions taken by a consumer reporting agency, there cannot be a willful violation claim as a matter of law. Should Plaintiff's willful violation claims be dismissed given the fact that courts and federal agencies uniformly have upheld the very actions that Experian is alleged to have undertaken in the complaint?

- 8 -

## LEGAL ARGUMENT

Plaintiff pleads three claims against Experian under Section 168i of the FCRA. None may move forward.

## I.   PLAINTIFF FAILS TO PLEAD A FACTUAL INACCURACY

"To bring a claim under § 1681i, a consumer 'must first show that his "credit file contains inaccurate or incomplete information."'" *Jones*, 2020 WL 2062325, at *4 (citation omitted). That is, "[a]ccurate reporting by a credit reporting agency is [] a complete defense to claims under . . . § 1681i(a)." *Gauci*, 2012 WL 1535654, *5. Thus, in order to succeed on any of his three claims under Section 1681i, Plaintiff must plead and prove that Experian reported *inaccurate* credit information about him. That he cannot do.

Plaintiff pleads that he did not make any payment on his loan with Truist Bank, alleging that "he was unable to get Truist to accept a payment *at any time*." ECF No. 1, ¶ 14 (emphasis added); ECF No. 11, ¶ 22. Truist, in turn, reported to Experian that Plaintiff did not make payments on the loan. ECF No. 11, ¶ 20. Accordingly, Experian's reporting of Plaintiff's account as having delinquent payments was 100% *factually accurate*. No amount of leave to amend will ever change this fact. Thus, Plaintiff's three claims under Section 1681i—which hinge upon the existence of a factual inaccuracy—must be dismissed.

Plaintiff may contend that Experian's reporting must be *legally* inaccurate because his contractual obligation to pay his loan was excused because "Truist did not allow Plaintiff to make payments." *Id.*, ¶ 22. But that is the textbook definition of a *legal dispute* between Plaintiff and Truist—*i.e.*, did Truist's alleged frustration of performance excuse

- 9 -

or suspend Plaintiff's contractual payment obligation? A consumer reporting agency, like Experian, does not have an obligation under Section 1681i of the FCRA to resolve such legal dispute between a consumer and creditor in connection with a reinvestigation request, as courts uniformly have held. *See, e.g.*, *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) ("Determining whether [the consumer] was entitled to stop making . . . payments is a question for a court to resolve in a suit against [the creditor] . . . not a job imposed upon consumer reporting agencies by the FCRA."); *Saunders*, 526 F.3d at 150 (same); *Jones*, 2020 WL 2062325, at *4 (same) (collecting cases). This is so because consumer reporting agencies, as the Ninth Circuit has put it, "are not tribunals." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010); *accord Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481 (11th Cir. 2020); *Brill v. TransUnion LLC*, 838 F.3d 919, 921 (7th Cir. 2016); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015); *Angino v. Transunion LLC*, 784 F. App'x 67, 69 (3d Cir. 2019); *Jianqing Wu v. Trans Union*, 2006 WL 4729755, at *4 (D. Md. May 2, 2006), *aff'd*, *Jianqing Wu v. Trans Union*, 219 Fed. Appx. 320 (4th Cir. 2007).

Accordingly, in connection with Plaintiff's reinvestigation request, Experian had no duty under Section 1681i to adjudicate whether, under state law, Plaintiff's payment obligations on his loan were suspended or excused due to Truist's alleged frustration of performance. *DeAndrade*, 523 F.3d at 68. This is particularly so here, as Plaintiff pleads that Truist, in connection with Experian's reinvestigation, "verified the accuracy of the credit reporting to Experian." ECF No. 1, ¶ 31; ECF No. 11, ¶ 40. In other words, contrary to Plaintiff's view, Truist takes the position that Plaintiff was not excused from making his

payments. Adjudging who is legally correct—the role of a court or a jury—is not an obligation the law imposes upon Experian; instead, it is a matter that Plaintiff must first resolve with Truist. *Saunders*, 526 F.3d at 150.

*Perry v. Toyota Motor Corp.*, Case No. 1:18-cv-00034, 2019 WL 332813 (W.D. Va. Jan. 25, 2019) is directly on point. Like here, the plaintiff purchased a Toyota. One month into the lease, Plaintiff filed for bankruptcy. The Toyota lease was included in the bankruptcy petition. While in bankruptcy, however, the plaintiff voluntarily assumed the vehicle lease. Post-discharge, Toyota sent billing statements to plaintiff, which he did not pay. Toyota then reported the delinquent payments to Experian, Equifax, and TransUnion. Although plaintiff disputed the reporting of those delinquencies, Toyota confirmed their accuracy. Like here, the plaintiff contended that the consumer reporting agencies violated Section 1681i in failing to reasonably reinvestigate his dispute. According to plaintiff, he was not responsible for the payments because the assumption agreement he executed in bankruptcy was included in the discharge. Toyota disagreed. In ruling on the consumer reporting agencies' motion to dismiss, the district court observed that it "need not weigh in on the issue" of whether plaintiff or Toyota was correct because plaintiff's "contention that the reporting is inaccurate because he is not liable for the assumption agreement presents a legal defense to the debt rather than a *factual inaccuracy* in the reporting, and thus he does not state a claim under the FCRA." *Id.* at *5 (emphasis added).

So too here. Plaintiff believes his payment obligations on the Truist loan were excused or suspended due to Truist's alleged frustration of his performance. But as *Perry* points out, a "complaint's allegations must dispute *facts* underlying a purported inaccuracy,

- 11 -

as the presentation of *legal defenses* to payment will not suffice." *Id.* (citation omitted) (italics in original). Yet, just as in *Perry*, Plaintiff's "claims against Experian do not dispute any facts underlying Experian's allegedly inaccurate reporting of his Toyota account as due and owing, with a past-due balance—[Plaintiff] admits that he stopped making payments on the debt[.]" *Id.* Rather, "his claims present a legal defense to payment"—frustration of performance by his contracting counter-party. *Id.* But "the FCRA is not suited to resolving such an argument. The FCRA aims to prevent inaccurate credit reporting; it is not a route for debtors to challenge the validity of underlying debts." *Id.* [1]

In his amended complaint, Plaintiff alleges that, "[f]or over 15 years, the Fourth Circuit has recognized that a consumer who attempted to make car payments, which payments were refused by the creditor, can state a claim for inaccuracy under the FCRA." ECF No. 11, ¶ 16 (citing *Saunders*, 526 F.3d 142; *Mitchell v. Ocwen Loan Servicing, LLC*, Civ. No. 4:14CV169, 2016 WL 8730899, at n. 6 (E.D.Va. Feb. 16, 2016)). Neither case assists Plaintiff with claims *against Experian*. In *Saunders*, the Fourth Circuit drew a clear distinction between claims involving legal disputes against *data furnishers* (Truist) and *consumer reporting agencies* (Experian). Claims against data furnishers involving legal disputes pose no concerns because a furnisher "is the creditor on the underlying debt":

> [A]ll of these cases are distinguishable because they involved claims brought against *CRAs* under § 1681e(b) or § 1681i,

---

[1] In drafting the FCRA, Congress predicted this circumstance, and added a provision in Section 1681i to allow consumers who have a dispute with their creditors over a debt to add a statement on to their credit report setting forth their position on the dispute: "If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute." 15 U.S.C. § 1681i(b). Plaintiff does not allege that he availed himself of this procedure.

- 12 -

> while the case at hand involves a claim against a *furnisher* under § 1681s–2(b)(1). Claims brought against CRAs based on a legal dispute of an underlying debt raise concerns about "collateral attacks" because the creditor is not a party to the suit, while claims against furnishers such as BB & T do not raise this consideration because the furnisher is the creditor on the underlying debt.

*Saunders*, 526 F.3d at 150 (italics in original). *Mitchell* is of the same ilk—a dispute between a consumer and the creditor on the underlying debt—not a consumer reporting agency. Thus, while Plaintiff may have a claim against *Truist* for its alleged conduct, his claim against Experian, pursuant to *Saunders* and its progeny, fails to state a claim for relief.

In short, Experian's reporting that Plaintiff failed to make payments on his loan with Truist is factually accurate, and whether Plaintiff's payment obligation was suspended due to Truist's frustration of performance is a "legal defense to payment" that Experian is not required to resolve in connection with a reinvestigation under Section 1681i.

## II. EXPERIAN'S IDENTITY VERIFICATION REQUEST WAS PROPER AND PLAINLY WAS NOT A VIOLATION OF SECTION 1681i

Plaintiff's claim that Experian violated Section 1681i by sending him an identity verification request cannot move forward for another reason: Experian only is required to reinvestigate disputes that originate from the *consumer himself*. 15 U.S.C. § 1681i(a); *Warner*, 931 F.3d at 919. Thus, in discharging its obligations under Section 1681i, a consumer reporting agency may request an identity verification to confirm that the *consumer himself*—and not a third party trying to gain access to a consumer's file—made the dispute, as courts repeatedly have found:

> Experian [pursuant to its suspicious mail policy] informed [Plaintiff] that it would not take further action unless he

- 13 -

> personally contacted Experian. [Plaintiff] now asserts that
> Experian's refusal to reinvestigate violated the Fair Credit
> Reporting Act. Experian, on the other hand, argues it did not
> have to reinvestigate because Warner did not communicate
> with Experian directly.
>
> We agree with Experian.

*Warner*, 931 F.3d at 919; *Turner*, 2017 WL 2832738 ("[T]his Court finds Experian's suspicious mail policy is reasonable because Experian has a duty not only to maintain accurate consumer credit information, but also to ensure the confidentiality of that information."); *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1012 (10th Cir. 2011) ("Experian's response in July was appropriate; it asked for additional identifying information to be sure it was being contacted by the consumer himself."); *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-3760, 2013 WL 1430467, at *8 (S.D.N.Y. Apr. 8, 2013) (finding it "entirely reasonable" to request additional identifying information before processing dispute and granting summary judgment to Experian); *Anderson v. Trans Union*, 405 F. Supp. 2d 977, 984 (W.D. Wis. 2005) (finding it "both reasonable and prudent" to verify identifying information before processing dispute and granting summary judgment to Trans Union); *Sarver v. Experian Information Solutions, Inc.*, 299 F. Supp. 2d 875, 877 (N.D. Ill. 2004) (finding it "reasonable" to request additional information about consumer before processing dispute and granting summary judgment to Experian); *A-1 Credit & Assurance Co., Inc. v. Trans Union Credit Info. Co.*, 678 F. Supp. 1147, 1151 (E.D. Pa. 1988) (finding that a consumer reporting agency "is certainly entitled to protect itself against claims of improper disclosure by . . . only dealing with the particular consumer").

- 14 -

Indeed, Experian's suspicious mail policy *correctly* identified that Plaintiff himself did not send the dispute letter. *Id.*, ¶ 25 (conceding that his lawyer mailed the letter).

Plaintiff does not plead *any facts* establishing that the letter his lawyer drafted and mailed to Experian identified that it was prepared by counsel for Plaintiff—*e.g.*, "This firm represents Mr. Keller, and he has authorized us to make this dispute on his behalf" and was on law firm letterhead identifying the firm as the source. Accordingly, Experian rightly requested identity verification from Plaintiff because, after all, Experian *correctly* identified that the letter was not sent by Plaintiff. To be sure, if the letter came from a criminal imposter and Experian's suspicious mail policy (as it did here) correctly identified that the letter did not come from the consumer himself, but nonetheless reinvestigated the dispute and provided Plaintiff's credit information to the imposter, Plaintiff would sue Experian for negligence. That is why circuit courts of appeal have reached the commonsense conclusion that a consumer reporting agency, in discharging its obligations under Section 1681i, may "ask[] for additional identifying information to be sure it was being contacted by the consumer himself." *Birmingham*, 633 F.3d at 1012.

Plaintiff's contrary position—that Experian must stick its head in the sand even if, as is the undisputed case here, Experian *correctly* identified that the letter did not come from the consumer himself—is not the law (see above), and could lead to potential identity theft (and other unintended outcomes). The claim is wholly without merit, and should be dismissed with prejudice.

- 15 -

## III. EXPERIAN HAD NO DUTY TO REINVESTIGATE

Section 1681i provides that consumer reporting agencies, such as Experian, must "conduct a reasonable reinvestigation" when an item in the consumer's credit file "is disputed *by the consumer* and *the consumer notifies the agency directly* ... of such dispute." 15 U.S.C. § 1681i(a)(1)(A) (emphasis added). Based upon the allegations in the complaint, however, Plaintiff "hired [a lawyer] to submit letters to credit agencies on his behalf, but he did little else." *Warner*, 931 F.3d at 921. As a matter of law, those letters plainly did not come "directly" from Plaintiff as is necessary to trigger a duty to reinvestigate on Experian's part.

"The preeminent canon of statutory interpretation requires [courts] to presume that the legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (internal quotation marks and brackets omitted). Plaintiff's claim "can be resolved by considering the unambiguous meaning of the word 'directly.'" *Id.* As the Ninth Circuit explained in *Warner*, "[t]he most pertinent definition of directly is 'without any intervening agency or instrumentality or determining influence.'" *Id.* (quoting Merriam-Webster's Third New International Dictionary 641 (2002)). "That definition," as the Ninth Circuit put it, "demonstrates that to notify a consumer reporting agency of a dispute 'directly,' a letter must come from the consumer and be sent to the agency." *Id.* (citing *Turner*, 2017 WL 2832738, at *8).

Case 1:23-cv-00409-LCB-LPA   Document 16   Filed 08/17/23   Page 16 of 25

As in *Warner*, Plaintiff "played almost no part in submitting the dispute letter to Experian." Beyond his allegations that his e-signature was affixed to the letter and he consented to have it mailed, *see* ECF No. 1 at ¶¶ 24 & 25. Plaintiff does not allege any *facts* to establish that he made a direct dispute. For example, apart from his conclusory allegation that he "worked with" his lawyers to prepare the letter, he does not plead any *facts* to establish his participation—such as whether he "identif[ied] the items to be disputed." *Warner*, 931 F.3d at 921. He does not even allege that he "review[ed] the letter [that his lawyer] drafted before it sent it to Experian." *Id.* Based upon the threadbare allegations in the complaint, it is entirely unclear whether Plaintiff "played [any] role in preparing the letters at all." *Id.* "Under those circumstances, the letters did not come 'directly' from [Plaintiff]." *Id.* (citing *Turner*, 2017 WL 2832738, at *8 (holding same). Thus, "[b]ecause [plaintiff] did not dispute the items in his credit file directly, Experian had no duty to respond." *Id.* at 922.

In addition to *Warner* and *Turner*, the Fifth Circuit's decision in *CBE Group , Inc. v. Lexington Law Firm*, 993 F.3d 346 (5th Cir. 2021) is instructive. There, CBE sued Lexington and its vendor "for purportedly perpetrating a fraud in which the firm failed to disclose that it was sending letters to the companies in its clients' names and on their behalves." *Id.* at 348. Like here, Lexington drafted and submitted dispute letters in the names of its clients, but failed to disclose that it was the source of the letter. *Id.* Although the Fifth Circuit found that Lexington's conduct did not amount to "fraud"—because CBE had "developed suspicions that the letters may not have been sent from consumers themselves" (thus defeating the element of reliance)—the court noted that, under *Warner*

- 17 -

and *Turner*, CBE "did not have a statutory obligation to investigate the correspondence Lexington Law sent on its clients' behalves and in their names[.]" So too here.

*Warner*, *Turner*, and *CBE* do not stand alone. For 40 years, the Federal Trade Commission was tasked with enforcing the FCRA. In July 2011, the FTC issued a staff report summarizing its interpretations, including one with respect to reinvestigations under section 1681i(a):

> *A CRA need not investigate a dispute about a consumer's file raised by a third party*—such as a "credit repair organization" defined in 15 U.S.C. § 1679a(3)—because the obligation under this section arises only where file information is disputed "by the consumer" who notifies the agency "directly" of such dispute.

Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations, 2011 WL 3020575, at *70 (July 2011) (emphasis added). Although interpretations in agency reports are not controlling, they are "entitled to considerable weight," *United States v. Nat'l Ass'n of Sec. Dealers, Inc.*, 422 U.S. 694, 718-19 (1975), and the Supreme Court has referred to FTC interpretations of the FCRA as "authoritative guidance." *Safeco*, 551 U.S. at 70.

Case law is in accord, with courts siding with consumer reporting agencies under indistinguishable facts. In *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824 (E.D.N.Y. 1994), for example, the district court concluded that plaintiffs' FCRA claim "can be disposed of readily," *id.* at 833, because the "FCRA requires that the information be conveyed *by the consumer* directly to the credit reporting agency." *Id.* (emphasis in original). Because, like here, plaintiffs "conceded that they failed to contact [the consumer reporting agencies] directly to convey to them the dispute regarding the accuracy of the

- 18 -

information on their credit reports," the consumer reporting agencies were entitled to summary judgment. *Id.*

*Klotz v. Trans Union, LLC*, No. 05-4580, 2008 WL 2758445 (E.D. Pa. July 16, 2008), reached the same conclusion, noting that, just like here, the author of the dispute letter decided "what was to be disputed" and "the basis for the dispute." *Id.* at *5. Plaintiff merely took the "pre-drafted disputes," signed the letters, and sent them to Trans Union. *Id.* at *2-3. Here, of course, Plaintiff did not even do that—his lawyer affixed his e-signature and mailed the letter. Regardless, Klotz's ministerial actions were not enough: "Under the plain text of section 1681i(a)(1)(A), a CRA has no obligation to reinvestigate unless an item is disputed 'by the consumer,' and the consumer 'notifies the agency directly of the dispute.'" *Id.* Based upon the facts before it, the court concluded that the items at issue "were not 'disputed by' the plaintiff." *Id.* at *5. Thus, the court concluded, "Trans Union did not owe the plaintiff a duty to reinvestigate," and his "claim under 1681i(a)(1)(A) fails." *Id.*[2]

Under the weight of this authority, Experian had no duty to reinvestigate a dispute letter that Plaintiff himself admittedly did not send. And, absent such duty, there is no

---

[2] In accord *Klotz v. Trans Union, LLC*, 246 F.R.D. 208 (E.D. Pa. 2007) (reasoning that the "statute requires a CRA to investigate a disputed item only if the dispute is conveyed 'directly' by the consumer" and "[i]f the dispute is not conveyed to the CRA 'directly,' a claim under section 1681i will fail"); *Wiggins v. Equifax Services, Inc.*, 848 F. Supp. 213, 220 & n. 9 (D.D.C. 1993) (finding genuine issue as to whether consumer complained "directly" to CRA, "a requirement for liability under § 1681i(a)"); *Jackson v. Warning*, No. 15-1233, 2016 WL 7228866, at *8 n. 9 (D. Md. Dec. 13, 2016) ("[e]ven if the CRA is informed of the dispute by the furnisher, the FCRA requires that the information be conveyed by the consumer directly to the credit reporting agency").

Case 1:23-cv-00409-LCB-LPA   Document 16   Filed 08/17/23   Page 19 of 25

legally cognizable claim under Section 1681i as a matter of law. For this independent reason, this suit should be dismissed.

## IV. EVEN IF EXPERIAN HAD A DUTY TO REINVESTIGATE, PLAINTIFF FAILS TO PLEAD FACTS ESTABLISHING EXPERIAN ACTED UNREASONABLY

Plaintiff says that Experian's reinvestigation of his dispute was unreasonable, but does not plead any facts establishing an unreasonable reinvestigation on Experian's part. Instead, Plaintiff alleges that, upon verification of his identity, Experian conducted a reinvestigation of his dispute that conformed to "standard practice in the credit reporting business and [wa]s required by contract." ECF No. 1, ¶ 30. Truist, in responding to Experian's reinvestigation, "verified the accuracy of the credit reporting to Experian." *Id.*, ¶ 31. There are no allegations that Truist was an unreliable source of credit information; nor, is there any allegation that the dispute letters that were sent to Experian provided any documentation that would have put Experian on notice that Truist's reporting was not accurate. While Plaintiff alleges that Experian did not ask him for such documentation, *see* ECF No. 11, ¶¶ 42-43, it was *Plaintiff's* duty to provide all relevant information to Experian in connection with the dispute. *McClelland v. Experian Information Solutions, Inc.*, 2006 WL 2191973, at *6 (N.D. Ill. July 28, 2006) ("Plaintiff's second, third, and fourth letters were no more helpful—each subsequent letter merely repeated the 'not my account' assertion, without providing any additional information."); *see also id.* (the lack of information in plaintiff's dispute letters qualifies as a "failure to provide sufficient information to investigate the disputed information") (citation omitted).

- 20 -

Under these facts, courts consistently and rightly dismiss claims under Section 1681i. *See, e.g., Huffman v. Experian Info. Sols. Inc.*, 2021 WL 1561304, at *8 (N.D. Cal. April 14, 2021) ("[Automated Consumer Dispute Verification] ACDV process sufficient to constitute a reasonable reinvestigation as a matter of law where the CRA provided the furnisher with all relevant information and had no reason to suspect the furnisher's reliability."); *Barron v. Equifax Info. Servs., LLC*, 802 F. App'x 161 (5th Cir. 2020) (finding that a "reporting agency's reliance on the ACDV system is generally acceptable" and that the consumer "offered no reasonable factual basis for finding the defendants should have been on notice of a need to go beyond the ACDV system as to this dispute"); *Mainor v. Acctcorp of S. Nevada*, No. 2:16-CV-00183-RFB-BNW, 2019 WL 4738012, at *4 (D. Nev. Sept. 28, 2019) (finding that CRA reasonably reinvestigated dispute through use of ACDV); *Stewart v. Equifax Info. Servs., LLC*, 320 F. Supp. 3d 1186, 1212 (D. Kan. 2018) (same); *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1103 (D. Minn. 2011) (same); *Bermudez v. Equifax Info. Servs., LLC*, No. 6:07-CV-1492-ORL-31-GJK, 2008 WL 5235161 (M.D. Fla. Dec. 15, 2008) (same). In light of furnishers' direct knowledge of the facts of disputed credit transactions, courts will dismiss reinvestigation claims against a consumer reporting agency even while finding a question of fact as to the reasonableness of the furnisher's investigation. *E.g., Chijioke-Uche v. Equifax Info. Servs., LLC*, No. 19-CV-4006, 2021 WL 2005499, at *3 (E.D. Pa. May 20, 2021). Experian's reinvestigation of Plaintiff's dispute was reasonable.

Finally, as a separate claim, Plaintiff pleads that Experian violated Section 1681i by "reporting information that it could not verify." ECF No. 1, ¶¶ 91-94. The allegations in

the complaint defeat the claim. Plaintiff admits that Truist, in connection with Experian's reinvestigation of Plaintiff's dispute, "verified the accuracy of the credit reporting to Experian." *Id.*, ¶ 31. For this independent reason, this claim fails as a matter of law.

## V.    EXPERIAN DID NOT WILLFULLY VIOLATE THE FCRA

In *Safeco*, the Supreme Court held that, "[w]here . . . the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." 551 U.S. at 70. Given the well-developed body of case law and administrative agency guidance: (1) upholding Experian's right to request identity verification in connection with a reinvestigation request, and (2) finding that Experian has no obligation to reinvestigate where, as admittedly is the case here, a dispute is not sent by the consumer himself, there is no violation of Section 1681i, much less a willful violation. Thus, the willful violation claims should be dismissed with prejudice.[3]

## CONCLUSION

The motion to dismiss should be granted without leave to amend.

---

[3]    Citing the Eleventh Circuit's unpublished decision in *Younger v. Experian Information Solutions, Inc.*, 817 Fed. Appx. 862 (11th Cir. 2020), Plaintiff pleads "[t]he *Younger* decision . . . ha[s] provided Experian notice that its suspicious mail policy entails an unjustifiably high risk of harm that is now known." ECF No. 11, ¶ 66. Not so. *Younger* held the *exact opposite*, finding that "Experian's actions had a foundation in the statutory text" and thus, were *not* willful. *Younger*, 817 Fed. Appx. at 870-71. Accordingly, under the authority cited in Plaintiff's complaint, the willful violation claim must be dismissed.

- 22 -

Dated: August 17, 2023

Respectfully submitted,

By:

_/s/ Caren D. Enloe_

Caren D. Enloe
NC State Bar No. 17394
Of SMITH DEBNAM NARRON
DRAKE SAINTSING & MYERS LLP
NC State Bar No. 17394
P.O. Box 176010
Raleigh, NC 27619-6010
Telephone: 919-250-2000
Facsimile: 919-250-2124

_Attorney for Defendant_
_Experian Information Solutions, Inc._

## CERTIFICATION OF WORD COUNT

The undersigned hereby certifies that the foregoing document does not exceed the word count set forth in L.R. Civ. Pro. 7.3. In making this certification, the undersigned relies upon the word count reported by its word processing software.

This the 16th day of August, 2023.

/s/ Caren D. Enloe
Caren D. Enloe
NC State Bar No. 17394
Of SMITH DEBNAM NARRON
DRAKE SAINTSING & MYERS, LLP
P.O. Box 176010
Raleigh NC 27619-6010
Telephone: (919)250-2000
Telefacsimile: (919)250-2100
cenloe@smithdebnamlaw.com

- 24 -

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served electronically through the CM/ECF filing system upon the following:

Benjamin M. Sheridan
Jed R. Nolan
Klein & Sheridan, LC PC
964 High House Rd. PMB 2039
Cary, NC 27513
ben@kleinsheridan.com
jed@kleinsheridan.com
*Counsel for Plaintiff*

Susan M. Rotkis
Consumer Attorneys PLC
2290 East Speedway Blvd
Tucson, AZ 85719
srotkis@consumerattorneys.com
*Counsel for Plaintiff*

David Chami
Consumer Attorneys PLC
8245 N. 85th Way
Scottsdale, AZ 85258
dchami@consumerattorneys.com
*Counsel for Plaintiff*

This the 17th day of August, 2023.

/s/ Caren D. Enloe
Caren D. Enloe
NC State Bar No. 17394
Of SMITH DEBNAM NARRON DRAKE SAINTSING & MYERS, LLP
P.O. Box 176010
Raleigh NC 27619-6010
Telephone: (919)250-2000
Telefacsimile: (919)250-2100
cenloe@smithdebnamlaw.com

- 25 -