IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ERIC KELLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV409 |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is a Motion to Dismiss, (ECF No. 15), filed by Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian") pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Eric Keller initiated this action alleging willful or, in the alternative, negligent violations of the Fair Credit Reporting Act ("FCRA" or "the Act"), 15 U.S.C. § 1681 *et seq.*, and seeking compensatory, actual, statutory, and punitive damages. (ECF No. 11 at 1, 14–17.) Plaintiff brings Count One on behalf of himself and all others similarly situated.[1] (*Id.* at 15.) With respect to Counts Two and Three, Plaintiff brings those Counts individually. (*Id.* 15–17.) For the reasons stated herein, Defendant's motion will be granted in part and denied in part.

---

[1] On August 14, 2023, the Magistrate Judge granted Plaintiff's motion filed with Defendant's consent to stay the requirement to file a motion for class certification pursuant to Local Rule 23.1(b) until further Order of the Court. (*See* ECF No. 14.)

## I. BACKGROUND[2]

Plaintiff's Amended Complaint, (ECF No. 11), alleges the following: In or around March 2021, Plaintiff purchased a 2021 Toyota 4 Runner and financed the vehicle through TD Auto Finance, (*id.* ¶ 6). In or around December 2021, Plaintiff refinanced the vehicle through Truist Bank ("Truist"). (*Id.* ¶ 7.) Truist sent payment to TD Auto for the original loan. (*Id.* ¶ 8.) Subsequently, Truist sent a duplicate payment to TD Auto for the original loan. (*Id.* ¶ 9.) TD Auto, upon realizing that it had been paid twice for the same loan, refunded the amount of one of the payments to Truist. (*Id.* ¶ 10.) Truist then mistakenly credited the money to Plaintiff's account with Truist and listed the car as paid off. (*Id.* ¶ 11.) Truist released the title to the vehicle to Plaintiff and sent Plaintiff a letter memorializing the title release and congratulating Plaintiff on the "payoff." (*Id.* ¶¶ 12–13.) Plaintiff made numerous attempts thereafter to make payments on the loan, but Truist refused to take Plaintiff's payments on the basis that, according to Truist, Plaintiff's loan was "paid off." (*Id.* ¶ 14.) Plaintiff was unable to get Truist to accept a payment at any time. (*Id.* ¶ 15.)

Thereafter, Truist realized it had made a mistake and reopened Plaintiff's account. (*Id.* ¶ 17.) Truist informed Plaintiff that the current amount due was $5,202.05, which represented all the payments up to that point, plus late fees and interest. (*Id.* ¶ 18.) Plaintiff made attempts to contact Truist to correct the amount owed, but Truist refused to help Plaintiff and reported on Plaintiff's credit report that he was several months in arrears. (*Id.* ¶¶ 19–20.) Plaintiff alleges that this reporting was false due to the delinquency being caused entirely by Truist's

---

[2] Because a motion to dismiss tests the sufficiency of Plaintiff's allegations in the Complaint, with all reasonable inferences drawn in Plaintiff's favor, the Court identifies the allegations in Plaintiff's Complaint pertinent to Defendant's motion.

2

conduct and because the reporting did not acknowledge that Truist did not allow Plaintiff to make payments, despite Plaintiff's multiple attempts to do so. (*Id.* ¶¶ 21–22.)

Plaintiff retained counsel and worked with his counsel to draft a letter disputing Truist's reporting of his account. (*Id.* ¶¶ 24–25.) Plaintiff electronically signed the letter and authorized his counsel to send the disputes to all three credit bureaus, including Experian. (*Id.* ¶ 26.) Experian is a "consumer reporting agency" [("CRA")] as defined in 15 U.S.C. § 1681a(f).[3] (*Id.* ¶ 3.) The dispute letter was mailed to Defendant via certified mail return receipt requested. (*Id.* ¶ 27.) The dispute letter indicated that it was from "Eric Keller" and listed his home address, set forth Plaintiff's dispute that the Truist account at issue was inaccurate due to "several mistakes" made by Truist including an accidental payoff and refusal to accept payment, and was signed at the bottom by Plaintiff. (*Id.* ¶¶ 29–31.) In response to Plaintiff's dispute, Experian sent a letter to Plaintiff stating that it was refusing to conduct a reinvestigation because it did not believe the dispute letter was sent by or authorized by Plaintiff. (*Id.* ¶ 34.) Plaintiff sent a second letter to Experian confirming that he authorized the dispute and imploring Experian to fulfill its legal obligations. (*Id.* ¶ 38.)

Experian relayed the second credit report dispute to Truist via an Automated Consumer Dispute Verification ("ACDV") communication, which is Defendant's standard practice. (*Id.* ¶ 39.) Truist responded to the ACDV by verifying the reporting as accurate without providing any proof to Experian that its reporting of the account was an accurate reflection of Plaintiff's obligation. (*Id.* ¶ 40.) Experian did not ask Truist to provide proof

---

[3] "The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

contrary to the allegations made by Plaintiff's dispute. (*Id.* ¶ 41.) Experian never contacted Plaintiff regarding his dispute. (*Id.* ¶ 42.) Plaintiff alleges that had Experian contacted him regarding the dispute, Plaintiff could have provided documentary proof, including communications to and from Truist. (*Id.* ¶ 43.) Experian did not conduct any investigation into Plaintiff's dispute other than to forward the ACDV to Truist and relay Truist's response. (*Id.* ¶ 44.) Defendant then mailed a letter to Plaintiff stating that it had verified that the information reported by Truist was accurate after a reinvestigation. (*Id.* ¶ 46.)

Plaintiff commenced this action on May 17, 2023. (ECF No. 1.) Defendant initially filed a motion to dismiss for failure to state a claim on July 6, 2023, (ECF No. 9); however, Plaintiff filed an Amended Complaint ("the Complaint"), (ECF No. 11), now the operative Complaint, on July 27, 2023. Defendant filed the instant Motion to Dismiss on August 17, 2023. (ECF No. 15.)

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In ruling on a motion to dismiss, a court may also consider documents attached

to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Lawhon v. Edwards*, 477 F. Supp. 3d 428, 436 (E.D. Va. 2020) (internal quotation marks omitted) (quoting *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019)). In assessing a claim's plausibility, a court must draw all reasonable inferences in the plaintiff's favor. *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 539 (4th Cir. 2013).

A claim is plausible when the complaint alleges facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "mere conclusory and speculative allegations" are insufficient, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013), and a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Vitol*, 708 F.3d at 548 (quoting *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille*, 716 F.3d at 350.

## III. DISCUSSION

### A. Fair Credit Reporting Act

Plaintiff seeks relief pursuant to the FCRA. (ECF No. 11 ¶ 1.) The Act "seeks to ensure 'fair and accurate credit reporting.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016) (quoting 15 U.S.C. § 1681(a)(1)). Further, the FCRA "exclusively regulates reporting and use of credit information." *Wilson v. Chrysler Cap.*, No. 19-CV-975, 2019 WL 12107374, at *2 (M.D.N.C. Nov. 14, 2019).

The Act also regulates how credit reporting agencies collect and transmit credit-related information to ensure that accurate information is reported, *Dalton v. Cap. Associated Indus., Inc.*,

5

257 F.3d 409, 414–15 (4th Cir. 2001), and allows consumers to challenge information in a consumer's file that they believe is inaccurate or incomplete, *see* 15 U.S.C. § 1681i. Section 1681i of the Act requires CRAs to reinvestigate disputed items in a consumer's credit file if the consumer notifies the agency of the dispute "directly." 15 U.S.C. § 1681i(a)(1)(A).

In addition to the duties it imposes on CRAs, the FCRA imposes duties on "furnishers of information" and prohibits any person from furnishing information to a CRA that the person knows is inaccurate. *Saunders v. Branch Banking & Tr. Co. off Va.*, 526 F.3d 142, 147–48 (4th Cir. 2008) (citing 15 U.S.C. § 1681s–2(a)).

A CRA may rely on information from a reputable source initially to compile a consumer's credit file under § 1681e(b); however, 15 U.S.C. § 1681i sets forth more detailed procedures for "reinvestigating" an entry on a credit report once a reporting agency is put on notice that the information may be incomplete or inaccurate. *Thomas v. Mercedes Benz Credit Corp.*, Civil Action No. AW-04-976, 2006 WL 8457059, at *5 (D. Md. June 27, 2006).

15 U.S.C. § 1681i provides in relevant part that:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information . . . . If, after any reinvestigation . . . an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall . . . promptly delete that item of information from the file of the consumer.

15 U.S.C. §§ 1681i(a)(1)(A), (a)(5)(A).

Whether a CRA's reinvestigation complies with this provision of the FCRA hinges on reasonableness, and reasonableness is typically determined by the fact-finder. *Thomas*, 2006 WL 8457059, at *5. The FCRA, however, does not explicitly define what constitutes a

6

reasonable reinvestigation. *Id.* "With respect to an analogous provision of the FCRA, 15 U.S.C. § 1681s-2(b)(1), the Fourth Circuit has opined that to determine reasonableness, 'the cost of verifying the accuracy of the information' should be weighed against 'the possible harm of reporting inaccurate information.'" *Id.* (citing *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 432 (4th Cir. 2004).

In evaluating whether a CRA has complied with § 1681i, courts have made clear that claiming a factual inaccuracy is different than asserting a *legal challenge* to the debt. *Jones v. City Plaza, LLC*, No. 1:19CV924, 2020 WL 2062325, at *4 (M.D.N.C. Apr. 29, 2020). "Claims brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not a party to the suit." *Saunders*, 526 F.3d at 150. Furthermore, "[b]ecause CRAs are ill equipped to adjudicate [legal] disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Jones*, 2020 WL 2062325, at *4 (second alteration in original) (internal quotation marks omitted) (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010) (citing *Saunders*, 526 F.3d at 150)).

The Court now evaluates each of the counts alleged in the Complaint to determine whether Plaintiff's factual allegations state a cognizable claim.

### B. Count One (Purported Class Claim) - Failure to Conduct Reinvestigation

Plaintiff in his Complaint makes broad allegations with respect to Defendant's Suspicious Mail Policy ("SMP"). (ECF No. 11 at ¶¶ 47–71.) Plaintiff alleges that Experian employs its SMP in an effort to ensure correspondence it receives concerning a consumer was sent by the consumer rather than a third-party. (*Id.* ¶ 48.) Experian's policy dictates that suspicious letters are not reinvestigated without further action by the consumer. (*Id.* ¶ 52.)

7

Plaintiff further alleges that Experian's decision to refuse to even review a dispute based on characteristics of the envelope fails to comply with 15 U.S.C. § 1681i(a)(1)(A). (*Id.* ¶ 58.)

As discussed above, 15 U.S.C. § 1681i(a) provides that "if the completeness or accuracy of any item of information contained in a consumer's file at a [CRA] is disputed by the consumer and the consumer notifies the agency *directly*," the CRA "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information." 15 U.S.C. § 1681i(a)(1)(A) (emphasis added). In a later subsection, the FCRA provides that notwithstanding the requirement to reinvestigate disputes sent directly from consumers, "a [CRA] may terminate a reinvestigation of information disputed by a consumer . . . if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681i(a)(3)(A).

Defendant argues that because it is only required to investigate disputes that originate directly from the consumer, in discharging its obligations under § 1681i, a CRA "may request an identity verification to confirm that the consumer himself—and not a third party trying to gain access to a consumer's file—made the dispute, as courts repeatedly have found[.]" (ECF No. 16 at 13–14 (collecting cases).) However, the cases that Defendant relies on to support its argument that requesting identity verification complies with § 1681i, were not determined at the motion to dismiss stage. In deciding a motion to dismiss, the Court is only assessing the sufficiency of a plaintiff's factual allegations, which must be taken as true, and the Court must make all reasonable inferences in the plaintiff's favor.

Turning to the factual allegations here, Plaintiff alleges he retained and worked with his attorney to draft a letter disputing Truist's reporting of his account. (ECF No. 11 ¶¶ 24–25.) Plaintiff electronically signed the letter and authorized his attorney to send the disputes to all three credit bureaus, including Experian. (*Id.* ¶ 26.) The dispute letter was mailed to Defendant via certified mail return receipt requested. (*Id.* ¶ 27.) The dispute letter indicated that it was from "Eric Keller" and listed his home address, set forth Plaintiff's dispute that the Truist account at issue was inaccurate due to "several mistakes" made by Truist including an accidental payoff and refusal to accept payment, and was signed at the bottom by Plaintiff. (*Id.* ¶¶ 29–31.) In response to Plaintiff's dispute, Defendant sent a letter to Plaintiff stating that it was refusing to conduct a reinvestigation because it did not believe the dispute letter was sent by or authorized by Plaintiff. (*Id.* ¶ 34.) Plaintiff sent a second letter to Experian confirming that he authorized the dispute. (*Id.* ¶ 38.) Defendant subsequently initiated the reinvestigation. (*Id.* ¶ 39.)

At this stage of the case, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in Plaintiff's favor. Plaintiff's factual allegations support a reasonable inference that under its SMP, Defendant fails to initiate reinvestigations, essentially terminating the reinvestigation based on suspected fraud, without determining whether the grounds for termination pursuant to 15 U.S.C. § 1681i(a)(3)(A) are satisfied. Plaintiff has included sufficient factual allegations to call into question Defendant's compliance with § 1681i(a)(1)(A) in light of Defendant's requirement that Plaintiff provide additional information *before* reinvestigating Plaintiff's dispute sent by his attorney. Whether Defendant's actions were ultimately reasonable is not a question the Court can settle at this stage of the case. Accordingly, Count One of Plaintiff's Complaint survives Defendant's Motion to Dismiss.

9

## C. Count Two (Unreasonable Reinvestigation) and Count Three (Reporting Information Which Defendant Cannot Verify)-Individual Claims

Plaintiff brings Counts Two and Three on his own behalf and not on behalf of any purported class. (ECF No. 11 at 15–16.) With respect to Count Two, Plaintiff alleges that Defendant violated 15 U.S.C. § 1681i because Defendant (1) failed to conduct a reasonable reinvestigation of the information in Plaintiff's credit file after receiving actual notice of inaccuracies; (2) failed to delete inaccurate information upon actual notice of inaccuracies; (3) failed to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and (4) relied upon verification from a source it has reason to know is unreliable. (*Id.* ¶ 104.) With respect to Count Three, Plaintiff alleges that Defendant failed to maintain "reasonable procedures" designed to prevent the reporting of incorrect information, in violation of 15 U.S.C. § 1681i(a)(5)(C). (*Id.* ¶ 108.)

To state a claim under § 1681i, a consumer must first show that his or her credit file contains inaccurate or incomplete information. *Jones*, 2020 WL 2062325, at *4. "To determine whether a consumer has identified a factual inaccuracy on his or her credit report that would activate § 1681i's reinvestigation requirement, [t]he decisive inquiry is whether the defendant [CRA] could have uncovered the inaccuracy if it had reasonably reinvestigated the matter." *Id.* (quoting *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008)) (first alteration in original) (internal quotation marks omitted ). Defendant argues that Plaintiff has failed to plead a factual inaccuracy given that Plaintiff alleges that "he was unable to get Truist to accept a payment at any time." (ECF No. 16 at 9 (citing ECF No. 11 ¶ 22).) Plaintiff argues that the Court should "avoid creating a novel, bright-line rule" by distinguishing "legal versus factual" inaccuracies, as the Fourth Circuit has not adopted this approach and other courts have rejected it. (ECF No. 17 at 6.) Furthermore, Plaintiff contends that "[e]ven if the Court were

to amend the text of the FCRA to impose additional requirements on the Plaintiff's prima facie case, the inaccuracies disputed were not a dispute about the 'legality' of the underlying debt." (*Id.*) Plaintiff also asserts that "Defendant could have quickly resolved the disputes had it simply attempted to do so." (*Id.*)

Turning to the factual allegations of Plaintiff's Complaint, Plaintiff alleges that he made numerous attempts to make payments on the loan, but Truist refused to take Plaintiff's payments on the basis that, according to Truist, Plaintiff's loan was "paid off," and Plaintiff was unable to get Truist to accept a payment at any time. (ECF No. 11 ¶¶ 14–15.) Plaintiff made attempts to contact Truist to correct the amount owed, but Truist refused to help Plaintiff and reported on Plaintiff's credit report that he was several months in arrears. (*Id.* ¶¶ 19–20.) After receiving verification from Plaintiff, Defendant relayed Plaintiff's credit report dispute to Truist, and Truist responded to the ACDV by verifying the reporting it had previously made to Experian was accurate. (*Id.* ¶¶ 38–40.) Defendant then mailed a letter to the Plaintiff stating that it had verified that the information reported by Truist was accurate after a reinvestigation. (*Id.* ¶ 46.)

Plaintiff argues that he has alleged sufficient facts demonstrating Experian's inaccurate reporting because he tendered payments to Truist; however, these payments were rejected. (ECF No. 17 at 5–6.) Plaintiff cites *Saunders* to support his arguments, stating that the Fourth Circuit "affirm[ed] a verdict for statutory and punitive damages against a *furnisher* under nearly identical facts." (*Id.* at 6 (emphasis added).) Plaintiff highlights the key distinguishing fact between *Saunders* and this case. In *Saunders*, the furnisher of the information did not escape liability under the FCRA. 526 F.3d at 148–51. However, Plaintiff does not bring this action against the furnisher, Truist, but rather against Experian, the CRA.

11

As discussed above, the Fourth Circuit has articulated its "concern" about collateral attacks in *Saunders*. *See Saunders*, 526 F.3d at 150. It is for this reason that courts in this district and others within the Fourth Circuit consistently hold that "[a] legal dispute on the underlying debt is a collateral attack on the credit report and is insufficient to sustain a FCRA claim." *Wilson*, 2019 WL 12107374, at *3. Plaintiff cites non-binding authority to support his position, (*see* ECF No. 17 at 6–11), in an attempt to avoid the case law that clearly applies in light of the facts alleged in the Complaint. The Court does not find Plaintiff's arguments persuasive.

Here, no reasonable investigation on the part of Defendant could have uncovered an inaccuracy in Plaintiff's report because there was never any factual deficiency in the report. Instead, Plaintiff has a legal dispute to the debt—whether Plaintiff's tendered payments, that Truist refused, in some way excused the debt. Contrary to Plaintiff's argument, Defendant could not have "quickly resolved" this dispute. (ECF No. 17 at 6.) This dispute is the subject of an action that Plaintiff has brought against Truist, which is pending before this Court. *See Keller v. Truist Bank, et al.*, No. 1:23-cv-407 (M.D.N.C filed May 17, 2023). Therefore, it is clear that the issue here is "not a factual inaccuracy that could have been uncovered by a reasonable investigation, but rather a legal issue that a [CRA] such as [Experian] is neither qualified nor obligated to resolve under the FCRA." *Jones*, 2020 WL 2062325, at *4 (quoting *DeAndrade*, 523 F.3d at 68).

In *Perry v. Toyota Motor Credit Corp.*, where the plaintiff brought a § 1681i claim against a CRA arguing that his past due credit reporting was incorrect because his bankruptcy discharge eliminated his obligation to make car loan payments, the district court found that "the Fourth Circuit has expressed concern about collateral attacks on underlying debts via FCRA suits against CRAs. Accordingly, Perry's contention that Experian inaccurately

12

Case 1:23-cv-00409-LCB-LPA   Document 21   Filed 03/30/24   Page 12 of 13

reported his account as due and owing, with a past-due balance fails to state a claim under FCRA §§ 1681e(b) and 1681i." No. 1:18CV00034, 2019 WL 332813, at *5 (W.D. Va. Jan. 25, 2019). Plaintiff's claim likewise fails because it is "nothing more than an impermissible collateral attack on the debt." *Jones*, 2020 WL 2062325, at *6 (dismissing the § 1681i claim).

This Court finds that Plaintiff's allegations characterize a legal dispute on the underlying debt, which is a collateral attack on the credit report. Accordingly, Plaintiff fails to plausibly allege that his consumer report contains inaccurate information. Therefore, Plaintiff's Counts Two and Three fail to state a claim against Defendant for violations of 15 U.S.C. § 1681i.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (ECF No. 15), is **GRANTED** with respect to Counts II and III, Plaintiff's individual claims, and **DENIED** with respect to Count I, Plaintiff's purported class claim.

This, the 30th day of March, 2024.

/s/Loretta C. Biggs
United States District Judge