IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ERIC KELLER, on behalf of himself  )
and others similarly situated,     )
                                   )
            Plaintiff,             )
                                   )
     v.                            )     1:23CV409
                                   )
EXPERIAN INFORMATION               )
SOLUTIONS, INC.,                   )
                                   )
            Defendant.             )
```

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

In this putative class action, Plaintiff Eric Keller seeks recovery from Defendant Experian Information Solutions, Inc. ("Experian") under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., for Experian's alleged failure to timely reinvestigate disputed information in his file. After successfully moving to dismiss two of Keller's claims (Doc. 21), Experian now seeks to dismiss Keller's remaining claim on the ground he lacks standing under Article III of the United States Constitution. (Doc. 45.) Keller has filed a response in opposition (Doc. 53), and Experian has filed a reply (Doc. 62). Pending also is Experian's motion for judgment on the pleadings (Doc. 24), Keller's motion to amend the complaint (Doc. 27), and Experian's motion for protective order and motion to quash request for entry (Doc. 48). These motions are also fully briefed. (Docs.

25; 26; 28; 29; 30; 31; 54; 57.) For the reasons that follow, the court finds that Keller lacks standing to proceed on his remaining claim, so Experian's motion to dismiss on that ground will be granted and Keller's remaining claim will be dismissed. Because the court lacks jurisdiction over the action, all other motions will be denied without prejudice.

## I. BACKGROUND

The allegations of Keller's first amended complaint, which are viewed in the light most favorable to Keller, show the following.

Keller purchased a new Toyota 4Runner in March 2021 and initially financed the vehicle through TD Auto Finance ("TD Auto"). (Doc. 11 ¶ 6.) He later refinanced the vehicle through Truist Bank ("Truist"), and Truist mistakenly sent TD Auto two payoff checks for the original loan. (Id. ¶¶ 7-9.) When TD Auto realized Truist's mistake, it returned one of the checks. (Id. ¶ 10.) Truist mistakenly credited the returned money to Keller's account, marked the loan as fully paid, and released the vehicle's title to Keller. (Id. ¶¶ 11-12.)

Keller repeatedly attempted to make payments on his loan, but Truist refused to accept them because its records indicated the loan had been fully paid. (Id. ¶¶ 14-15.) Eventually, Truist realized its mistake and reopened Keller's loan account. (Id. ¶ 17.) Upon its reopening, Keller's account included "numerous

2

late fees and significant interest" in addition to the full amount due. (Id. ¶ 18.) Keller unsuccessfully attempted to correct his account with Truist, and Truist reported Keller to the consumer reporting agencies ("CRAs") as several months in arrears. (Id. ¶¶ 19-20.)

Keller worked with legal counsel to draft and sign a dispute letter, which he sent to Experian. (Id. ¶¶ 25-26.) However, Experian initially flagged Keller's dispute letter through its suspicious mail policy because, according to Experian, the letter did not appear to have been sent or authorized by Keller. (Id. ¶ 34.) In response, Keller sent Experian a second dispute letter to confirm that he personally authorized the dispute. (Id. ¶ 38.)

In relevant part, Keller's dispute letter informed Experian that his automobile loan account with Truist "is reporting on my report several times in separate report entries," and that "there is something wrong with the report" because "the loan is in good standing." (Doc. 11-2 at 1.) The dispute letter also detailed Keller's underlying dispute with Truist, alleging that Truist refused to take Keller's payments before reporting Keller as more than 180 days delinquent on his loan payments. (Id.)

Experian forwarded Keller's second dispute letter to Truist, and Truist reported to Experian that the information in Keller's file accurately reflected Truist's records regarding the automobile loan account. (Doc. 11 ¶¶ 39-40.) Experian therefore

3

did not further investigate Keller's file, and it declined to alter or remove any of the disputed information. (Id. ¶ 46; see Doc. 27-2 at 2.)

In July 2023, Keller filed this lawsuit against Experian for alleged violations of 15 U.S.C. § 1681i and, as amended, brings (1) a purported class claim for Experian's initial failure to conduct a reinvestigation because of its suspicious mail policy; (2) an individual claim for Experian's unreasonable reinvestigation of the information in Keller's file; and (3) an individual claim for Experian's failure to maintain reasonable procedures to prevent the reporting of inaccurate information. (Doc. 11 ¶¶ 95-110.) He contends that he was "unable to obtain a mortgage loan on a property he was interested in" because of Experian's conduct. (Id. ¶ 72.) Moreover, Keller alleges that he suffered actual damages "in the form of lost credit opportunities, harm to his credit reputation and credit score, and emotional distress." (Id. ¶ 80.)

In August 2023, Experian filed a motion to dismiss for failure to state a claim, which Judge Loretta C. Biggs granted in part and denied in part.[1] (Docs. 9; 21.) Notably, the court found that the disputed information identified by Keller's dispute letter was "not a factual inaccuracy that could have been uncovered by a

---

[1] This case was subsequently reassigned to the undersigned on May 13, 2025.

4

reasonable investigation, but rather a legal issue that a [CRA] such as [Experian] is neither qualified nor obligated to resolve under the FCRA." Keller v. Experian Info. Sols., Inc., 2024 WL 1349607, at *6 (M.D.N.C. Mar. 30, 2024) (alterations in original) (quoting Jones v. City Plaza, LLC, 19CV924, 2020 WL 2062325, at *4 (M.D.N.C. Apr. 29, 2020)). The court reasoned that "no reasonable investigation on the part of [Experian] could have uncovered an inaccuracy in [Keller's] report because there was never any factual deficiency in the report." Id. Finding that "a consumer must first show that his or her credit file contains inaccurate or incomplete information" to state a claim under 15 U.S.C. § 1681i, the court dismissed both of Keller's individual claims. See id. at *5-6 (quoting Jones, 2020 WL 2062325, at *4).[2]

With that dismissal, only Keller's purported class claim remains. Four motions are now pending before the court. First, Experian has moved for judgment on the pleadings. (Doc. 24.) Second, Keller seeks leave to amend his first amended complaint. (Doc. 27.) Third, Experian has moved to dismiss the action for lack of Article III standing. (Doc. 45.) Fourth, Experian has moved for a protective order and to quash Keller's request for

---

[2] The Fourth Circuit recently held, in a FCRA case against the furnisher of information, that "inaccuracies — whether legal, factual, or a mix of both — are actionable under § 1681s-2(b) so long as the plaintiff pleads an objectively and readily verifiable inaccuracy." Roberts v. Carter-Young, Inc., 131 F.4th 241, 252 (4th Cir. 2025); see also 15 U.S.C § 1681s-2(b) ("Duties of furnishers of information upon notice of dispute"). In the present case, Experian is a CRA, not a furnisher.

5

entry (Doc. 48). Because standing challenges the court's subject matter jurisdiction, the court considers that motion first.

## II. ANALYSIS

### A. Standard of Review

Article III of the United States Constitution empowers federal courts to decide "Cases" and "Controversies." U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case — in other words, standing." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (quoting Raines v. Byrd, 521 U.S. 811, 819 (1997)). To satisfy the "irreducible constitutional minimum of standing," a plaintiff must "show (1) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury would likely be redressed by judicial relief." Fernandez v. RentGrow, Inc., 116 F.4th 288, 294 (4th Cir. 2024) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).

"The strictures of Article III standing apply with no less force in the context of class actions." Id. at 295. In class actions, courts analyze standing "based on the allegations of personal injury made by the named plaintiffs." Baehr v. Creig Northrop Team, P.C., 953 F.3d 244, 252 (4th Cir. 2020) (quoting Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc., 892 F.3d 613,

620 (4th Cir. 2018)). Moreover, "[t]he party invoking federal jurisdiction bears the burden of establishing the[] elements" of standing. Defs. of Wildlife, 504 U.S. at 561.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss the court 'presumes that general allegations embrace those specific facts that are necessary to support the claim.'" Id. (citation modified) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)). "Nevertheless, the party invoking the jurisdiction of the court must include the factual allegations in the pleading, or else the case must be dismissed for lack of standing." Bishop v. Bartlett, 575 F.3d 419, 424 (4th Cir. 2009). "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." Whitmore v. Arkansas, 495 U.S. 149, 155-56 (1990).

B. **Whether Keller Suffered an Injury in Fact**

Experian contends that, even if the suspicious mail policy violated 15 U.S.C. § 1681i(a)(1)(A), Keller has alleged no concrete harm. (Doc. 46 at 8.) Specifically, because Experian's report of Keller's file contained no factual inaccuracies, Experian argues, Keller has pleaded only a technical violation of the FCRA. (Id. at 9.) Keller counters that a technical violation will suffice for standing. (Doc. 53 at 9.) Moreover, he argues that he has alleged a concrete injury in that Experian's initial failure to

7

forward his dispute to Truist delayed the resolution of the dispute, he wasted valuable resources by sending multiple dispute letters, and he was unable to obtain a mortgage loan on a property of interest. (Id. at 10.)

"[A] plaintiff does not 'automatically satisf[y] the injury-in-fact requirement' whenever a statute like the FCRA 'grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" Fernandez, 116 F.4th at 294 (quoting TransUnion, 594 U.S. at 426). "Article III standing requires a concrete injury even in the context of a statutory violation." Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016).

In Fernandez, upon which Experian relies and contends is controlling (Doc. 46 at 7), the Fourth Circuit addressed whether the plaintiff had suffered a concrete injury after a CRA included misleading information on his tenant screening report. Fernandez, 116 F.4th at 292. Specifically, the report identified the plaintiff as a "possible match" to a person on the United States Treasury Department's Office of Foreign Assets Control's ("OFAC's") list of specially designated nationals who threaten America's national security. Id. The CRA then sent the report, which recommended the rejection of the plaintiff's application, to the prospective landlord. Id. Notably, however, the designation of the plaintiff as a possible match with OFAC's list did not factor into the report's recommendation. Id. The prospective

8

landlord initially denied the plaintiff's apartment application, only to approve the application two days later. Id. at 293. Moreover, the prospective landlord never read the report's section that had identified the plaintiff as a possible match with OFAC's list. Id. at 299.

Comparing the plaintiff's claim to the tort of defamation, the Fourth Circuit held that the plaintiff "failed to demonstrate that the misleading . . . information in his screening report was read and understood, or otherwise considered, by any third party." Id. at 300. The court reasoned that the plaintiff failed to demonstrate a concrete injury "flowing from th[e] alleged statutory violation" because he asserted only reputational harm, which could not have occurred absent a third party's consideration of the report. Id. Thus, the plaintiff lacked Article III standing. Id.

It is true that "a bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement in the FCRA context. Spokeo, 578 U.S. at 341. But here, unlike the plaintiff in Fernandez, Keller has alleged more than a statutory violation. Indeed, Keller asserts in the first amended complaint that, "[a]s a result of [Experian's] conduct, [he] has been unable to obtain a mortgage loan on a property he was interested in." (Doc. 11 ¶ 72.) Thus, contrary to Experian's argument, this factual allegation plausibly alleges a concrete

9

injury.³

   **C. Whether Keller's Injury Was Fairly Traceable to Experian's Suspicious Mail Policy**

Next, Experian argues that, even if Keller suffered an injury in fact, that injury cannot fairly be traced to Experian's conduct because Keller's file with Experian contained no factual inaccuracies. (Doc. 46 at 11.) Keller counters that — regardless of the <u>content</u> of his file — Experian's suspicious mail policy prevented Experian from initially forwarding his dispute to Truist. (Doc. 53 at 7.) According to Keller, Experian's failure to immediately forward the dispute to Truist thereby delayed resolution of his dispute and resulted in his inability to obtain a mortgage loan. (<u>Id.</u> at 8.)

In addition to an injury in fact, "there must be a causal connection between the injury and the conduct complained of — the injury has to be 'fairly . . . trace[able] to the challenged action

---

³ Keller also asserts that he wasted time, energy, postage, and attorney resources because Experian's suspicious mail policy forced him to send multiple letters. (Doc. 53 at 8.) However, these allegations do not appear in either the operative first amended complaint or the proposed second amended complaint. (<u>See</u> Docs. 11; 27-4.) The court does not address these alleged harms because, at this stage, it bases its standing determination only on the allegations contained in the pleadings. <u>See</u> <u>Bishop</u>, 575 F.3d at 424; <u>see also</u> <u>Kerns v. United States</u>, 585 F.3d 187, 192 (2009) (noting that when a defendant offers a facial challenge to a complaint and contends "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based . . . the plaintiff, in effect, is afforded the same procedural protection as he would have received under a Rule 12(b)(6) consideration" in that the "facts alleged in the complaint are taken as true" (quoting <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982))).

10

of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" Lujan, 504 U.S. at 560 (alterations in original) (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 41-42 (1976)).

Here, Experian correctly asserts that the content of Keller's file cannot serve as the cause of Keller's injury. Judge Biggs has already found that Keller's file with Experian contained no factual inaccuracies. See Keller, 2024 WL 1349607, at *6. Moreover, the delay in Experian's reinvestigation cannot have caused Keller's alleged injury. The first amended complaint itself makes clear that even when Experian later forwarded Keller's complaint to Truist, Truist still — albeit erroneously — reported that Keller's file accurately reflected Truist's own records. (Doc. 11 ¶ 40.) Thus, an immediate reinvestigation (absent the alleged delay) only would have more quickly led Truist to affirm – incorrectly - that Keller's file accurately reflected Truist's own records. (Id.) Keller fails to allege how any earlier reporting by Truist would have permitted him to obtain his mortgage.

To provide standing, Keller's alleged harm must fairly be traced to some delay in resolving the underlying legal dispute because of Experian's failure to immediately forward the dispute to Truist. However, none of the allegations within Keller's first amended complaint connects Keller's inability to obtain a mortgage

11

loan to Experian's delay. Rather, the first amended complaint is utterly silent on the resolution of the underlying legal dispute between Keller and Truist, let alone how Experian's suspicious mail policy affected that resolution. (See id.) And regardless, Keller always had the option of disputing the information on his automobile loan account with Truist directly. See 12 C.F.R. § 1022.43; see also Roberts v. Carter-Young, Inc., 131 F.4th 241, 245 (4th Cir. 2025) ("If a consumer believes information in her credit report is inaccurate or incomplete, she can dispute the information directly with the furnisher."). Upon receiving a direct dispute from Keller, Truist would have been required to "conduct a reasonable investigation" of Keller's account, including any dispute "relating to the current payment status." 12 C.F.R. § 1022.43(a)(3).

The allegations in Keller's first amended complaint fail to plausibly set out how Experian's immediate forwarding of Keller's first dispute letter might have led Keller to obtain his desired mortgage loan, leaving the court to only speculate. The court will not embellish Keller's deficient allegations to confer standing. See Simon, 426 U.S. at 45 (holding that the plaintiff lacked standing in part because "[s]peculative inferences [were] necessary to connect the[] injury to the challenged actions" of the defendant). Thus, the court finds that Keller's alleged concrete harm cannot fairly be traced to Experian's suspicious

12

mail policy.

### D. Whether Keller's Proposed Second Amended Complaint Cures the Standing Deficiency

In his response to Experian's motion, Keller also argues that his proposed second amended complaint details additional concrete harms fairly traceable to Experian's conduct. Specifically, Keller contends that the proposed amendments allege factual inaccuracies within Keller's file that Experian could have resolved through an immediate reinvestigation. (Doc. 53 at 8.) Experian counters that only Keller's operative first amended complaint can be considered in determining whether Keller has standing. (Doc. 62 at 9.) Experian also argues that, even if considered, Keller's proposed amendments still fail to allege a factual inaccuracy within Keller's file. (Id. at 10.)

A court may "properly consider the proposed amendments to the complaint 'in order to ensure that [it] consider[ed] and addresse[d] fulsomely the standing arguments.'" Pedreira v. Ky. Baptist Homes for Child., Inc., 579 F.3d 722, 729 (6th Cir. 2009) (alterations in original) (quoting Pedreira v. Ky. Baptist Homes for Child., Inc., 553 F. Supp. 2d 853, 854-55 (W.D. Ky. 2008)); see also S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs, 789 F.3d 475, 484 (4th Cir. 2015) (affirming the denial of a motion for leave to file a first amended complaint because the underlying complaint was moot and the plaintiff "offered no

13

additional basis for standing with respect to the claim it sought to add").

Federal Rule of Civil Procedure 15 provides that a plaintiff may amend a complaint once as a matter of course within twenty-one days after the earlier of (1) service of a responsive pleading or (2) service of a motion under Federal Rule of Civil Procedure 12(b), (e), or (f).  After that period, a party may amend only with either the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a)(2).  While district courts have discretion to grant or deny a motion to amend, the Fourth Circuit has interpreted Rule 15(a) to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006); Foman v. Davis, 371 U.S. 178, 182 (1962) (same).

"[D]istrict courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." In re Triangle Cap. Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021).  "While a challenge to a plaintiff's standing is properly considered under Rule 12(b)(1), it follows that a district court may also deny leave to amend as futile where the proposed amended complaint fails for lack of standing." Evans v. Am. Collection Enter., 624 F. Supp. 3d 593, 598 (D. Md. 2022).  Accordingly, the

14

question is whether Keller's proposed amendments cure the identified lack of Article III standing.

In his proposed second amended complaint, Keller alleges that "Experian allowed Truist to report the same account multiple times," with three loans showing "the same monthly payment due, the same date opened, and the same loan term." (Doc. 27-4 ¶¶ 25-26.) According to Keller, one tradeline even depicted no loan information for eight months, then suddenly showed that Keller was 180 days overdue on the loan. (Id. ¶ 30.) Thus, because "[i]t is factually impossible to be 180 days delinquent only one month after showing no information" and "Experian possessed this conflicting information," Keller alleges, the information "should have alerted Experian" to the need to further reinvestigate Truist's reporting. (Id. at ¶¶ 31-33.)

As Experian argues, however, none of these allegations demonstrates an injury in fact fairly traceable to Experian's conduct. At most, Keller contends that Experian had notice of his underlying legal dispute with Truist and should have conducted a more thorough investigation. However, courts in the Fourth Circuit have repeatedly found that CRAs like Experian are ill-equipped, and therefore not obligated, to resolve such disputes. See Keller, 2024 WL 1349607, at *6; Wilson v. Chrysler Cap., 19-CV-975, 2019 WL 12107374, at *3 (M.D.N.C. Nov. 14, 2019) ("A legal dispute on the underlying debt is a collateral attack on the credit report

15

and is insufficient to sustain a FCRA claim [under § 1681i]."); Perry v. Toyota Motor Credit Corp., 18CV00034, 2019 WL 332813, at *5 (W.D. Va. Jan. 25, 2019) (same). Thus, Keller's proposed amendments fail to alter the court's standing determination.

### E. Whether Class Dismissal Is the Appropriate Remedy when the Named Plaintiff Lacks Standing

Finally, Experian argues that the entire case must be dismissed if Keller, the proposed class representative, lacks standing. (Doc. 46 at 12-13.) Keller counters that the proper remedy would be to name a new class representative. (Doc. 53 at 12.)

"A putative class . . . cannot establish Article III standing 'without a sufficient allegation of harm to the named plaintiff in particular.'" Baehr, 953 F.3d at 252-53 (quoting Hutton, 892 F.3d at 620). If the district court determines that the named plaintiff lacks Article III standing to sue, it is "obliged to dismiss" the case. Id. at 258; see also Chapman v. M.M. Fowler, Inc., No. 19-CV-157, 2020 WL 1488353, at *5 (E.D.N.C. Mar. 23, 2020) ("Where plaintiff lacks standing to bring her individual claims, she also lacks standing to bring claims on behalf of a nationwide putative class.").

Here, because Keller lacks Article III standing to bring his remaining claim against Experian, he cannot proceed as class

16

representative and the case must be dismissed.[4] Keller's reliance on Chisolm v. TransSouth Fin. Corp., 194 F.R.D. 538, 555 (E.D. Va. 2000), is of no assistance as it addresses the proper remedy when a court finds – upon a motion to decertify a class action – that the named plaintiffs lack the typical characteristics of the putative class members under Federal Rule of Civil Procedure 23(a). Indeed, while weighing whether to dismiss the action, the court in Chisolm reasoned that the substitution of new class representatives is only the "proper course" if "the suit has been certified as a class action, which would make the unnamed class members parties to the suit . . . [and] at least one of these unnamed class members had standing." Id. (quoting Walters v. Edgar, 163 F.3d 430, 432 (7th Cir. 1998)). But in the present case, there is simply no party who has alleged an injury in fact that can fairly be traced to Experian's challenged conduct – specifically, its suspicious mail policy. Thus, dismissal is warranted.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Experian's motion to dismiss

---

[4] Because standing is a threshold jurisdictional question, the court does not reach the merits of the parties' other pending motions, which will be denied as moot without prejudice. See Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 347 (4th Cir. 2017) ("Without jurisdiction the court cannot proceed at all in any cause." (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)))

17

(Doc. 45) is GRANTED, Keller's first amended complaint (Doc. 11) is DISMISSED WITHOUT PREJUDICE, and Experian's motion for judgment on the pleadings (Doc. 24), Keller's motion for leave to amend (Doc. 27), and Experian's motion for a protective order and motion to quash Keller's request for entry (Doc. 48) are DENIED WITHOUT PREJUDICE.

                                                /s/   Thomas D. Schroeder
                                                United States District Judge

September 23, 2025